|  |  |
|---|---|
| BMO BANK N.A., fka BMO HARRIS BANK N.A., a national association,<br><br>Plaintiff,<br><br>v.<br><br>LALA TRUCKING INC, a California corporation; VARINDER SINGH, an individual resident and citizen of California; DOES 1-10,<br><br>Defendants. | Case No. 1:24-cv-01114-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(Doc. 10)<br><br>FOURTEEN-DAY DEADLINE |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

On December 31, 2024, Plaintiff BMO Bank N.A. ("Plaintiff") filed a motion for entry of default judgment against Defendants Lala Trucking Inc. and Varinder Singh. (Doc. 10.) No opposition was filed, and the time in which to do so has expired. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On January 2, 2025, the Court vacated the motion hearing and indicated that the matter would be decided on the papers. (Doc. 14.) The matter is suitable for decision without oral argument pursuant to Local Rule 230(g).

Having considered the moving papers and the Court's file, and for the reasons detailed below, the Court will recommend that Plaintiff's motion for default judgment be granted.

1

**I.    BACKGROUND**[1]

**A. The Loan Agreements**

1. <u>Agreement 25001 – May 22, 2020</u>

On May 22, 2020, Plaintiff and Defendant Lala Trucking entered into a Loan and Security Agreement with contract number ending 25001 ("Agreement 25001"), pursuant to which Plaintiff agreed to finance Defendant Lala Trucking's purchase of certain vehicles for use in Defendant Lala Trucking's business ("25001 Vehicles"), and Defendant Lala Trucking agreed to pay Plaintiff $99,171.00, including interest.  (Doc. 1, Ex. 1.)

2. <u>Agreement 75001 – January 26, 2023</u>

On January 26, 2023, Plaintiff and Defendant Lala Trucking entered into a Loan and Security Agreement with contract number ending 75001 ("Agreement 75001"), pursuant to which Plaintiff agreed to finance Defendant Lala Trucking's purchase of certain vehicles for use in Defendant Lala Trucking's business ("75001 Vehicles"), and Defendant Lala Trucking agreed to pay Plaintiff  $481,964.96, including interest.  (Doc. 1, Ex. 2.)

**B. The Guaranties**

In connection with the Agreements 25001 and 75001, Defendant Singh executed Continuing Guaranties on May 22, 2020, and January 26, 2023.  By signing the Continuing Guaranties, Defendant Singh guaranteed the full and timely performance of all of Defendant Lala Trucking's present and future liabilities to Plaintiff.  (Doc. 1, Ex. 3.)

**C. The Security Interest**

In consideration for entering the above-described agreements, Defendant Lala Trucking granted Plaintiff a first-priority security interest in the respective vehicles.  The vehicles consist of the following:

<u>25001 Vehicles</u>

    a.  2020 Great Dane Refrigerated Van 53', Vin: 1GR1A062XLW175891, and 2020 Thermo King S600, Serial: #6001315260

---

[1] Background facts are derived from the allegations in the Complaint filed on September 19, 2024.  (Doc. 1.)

<u>75001 Vehicles</u>

  b.  2023 Peterbilt 579-Series Tractor, Vin: 1XPBD49X2PD837256

  c.  2023 Peterbilt 579-Series Tractor, Vin: 1XPBD49X8PD837259

Plaintiff perfected its security interest in the vehicles by recording its liens on the Certificate of Title for each vehicle. (Compl., ¶ 13, Ex. 4.)

**D. Default by Defendants**

Defendants are in default under the above-referenced Loan and Security Agreements ("Agreements") and Guaranties for their failure to pay the amounts due thereunder. (Compl., ¶ 14.) Defendant Lala Trucking failed to make payments due on Agreement 25001 commencing July 6, 2024, and on Agreement 75001 commencing May 1, 2024. (*Id.* ¶ 15.) Pursuant to the Agreements, the entire amounts due have been accelerated. As of the respective dates of default, the principal amount due and owing after acceleration is as follows:

- Agreement 25001: $18,488.90
- Agreement 75001: $309,636.08

(*Id.* ¶ 16.) At the time of default, accrued and unpaid interest due and owing under the Agreements is as follows:

- Agreement 25001: $8.63
- Agreement 75001: $2,468.51

(*Id.* ¶ 17.) Under the Agreements, calculated from the respective dates of defaults to the dates of acceleration, accrued and unpaid interest due and owing under the Agreements is as follows:

- Agreement 25001: $344.76
- Agreement 75001: $9,547.96

(*Id.* ¶ 18.)

Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of 1.5% per month (18% per annum) or the maximum rate not prohibited by applicable law. (Compl. ¶ 19.) The daily default rates of interest accruing since the dates of acceleration are as follows:

- Agreement 25001: $9.24
- Agreement 75001: $154.82

(*Id.* ¶ 19) Under the Agreements, Defendants are obligated to pay late charges and other fees.

3

1   (*Id.* ¶ 20.) Through acceleration, late charges have accrued under the Agreements as follows:

- Agreement 25001:   $766.69
- Agreement 75001:   $3,410.34

(*Id.* ¶ 21.) Through acceleration, other fees, including but not limited to return item fees, have accrued under the Agreements as follows:

- Agreement 25001:   $50.00
- Agreement 75001:   $50.00

(*Id.* ¶ 22.)

By letters dated September 10, 2024, Plaintiff notified Defendants of their defaults under the Agreements, and of Plaintiff's election to accelerate the loans evidenced by the Agreements. In addition, Plaintiff demanded that Defendants pay the amounts due under the Agreements and surrender the vehicles. (Compl. ¶ 25; Doc. 1, Ex. 5.)  Despite demand, Defendants have failed and refused to pay the amounts due and owing under the Agreements and Guaranties.  (Compl. ¶ 26.)

Under the Agreements, Plaintiff has the right to enter any premises and take possession of the Vehicles.  (Compl. ¶ 27.)  As of the filing of the lawsuit, the collateral vehicles remained in Defendants' possession or control.  (*Id.* ¶ 28.)

Plaintiff initiated this action on September 19, 2024, asserting causes of action for injunctive relief, specific performance, claim and delivery, and breach of contract against Defendants.  Plaintiff served Defendant Lala Trucking with the summons and complaint by substituted service at a "home" located at "3660 W. San Jose Avenue, Apt. #216, Fresno, CA 93711," by leaving a copy of the summons and complaint with John Doe, an employee/person apparently in charge, on October 1, 2024. (Doc. 6.)  Thereafter, a copy of the summons and complaint were mailed to Defendant Lala Trucking at the same address on October 2, 2024. (*Id.*) Similarly, Defendant Singh was served by substituted service on the same date at the same address by also leaving a copy of the summons and complaint with John Doe.  A copy of the summons and complaint were mailed to Defendant Singh on October 2, 2024.  (Doc. 7.)

Defendants did not respond to the complaint, and on November 5, 2024, Plaintiff filed a request for entry of default. (Doc. 8.)  On the same day, the Clerk of the Court entered default

4

against Defendants Lala Trucking and Varinder Singh.  (Doc. 9.)

On December 31, 2024, Plaintiff filed the instant motion for default judgment.  (Doc. 10.) Plaintiff requests default judgment in the total amount of $364,738.19, which includes a request for attorney's fees in the amount of $3,672.50, court costs of $556.84, and repossession costs of $2,120.00, less any net proceeds received from the sale of the collateral vehicles.  Plaintiff also seeks immediate possession of the following unrecovered collateral vehicles:

<u>25001 Vehicle</u>

2020 Great Dane Refrigerated Van 53', Vin: 1GR1A062XLW175891 with 2020 Thermo King S600, Serial: #6001315260

<u>75001 Vehicle</u>

2023 Peterbilt 579-Series Tractor, Vin: 1XPBD49X2PD837256

(Doc. 8 at p. 7.)  Plaintiff repossessed the 2023 Peterbilt 579-Series Tractor, Vin: 1XPBD49X8PD837259, and spent $2,120.00 in repossession costs.  (Doc. 10 at 5, ¶ 6.).  The tractor will be sold in a commercially reasonable manner.  A credit of the net proceeds of the sale will be applied to interest, fees, and costs, then toward the remaining principal.  (Doc. 12, Declaration of Whitney Oliver ("Oliver Decl.") at ¶ 15.)

## II.     LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."  *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002)

## III.   DISCUSSION

### A.  Service of Process

In deciding whether to grant or deny a default judgment, a court must assess the adequacy of the service of process on the party against whom default is requested.  *See*, *e.g.*, *Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388, at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912, at *1 (E.D. Cal. Dec. 15, 2010).

Plaintiff is suing both a corporate entity and an individual in this action.  The Complaint identifies Defendant Lala Trucking's principal place of business as located at 3660 W. San Jose Avenue Apt. #216, Fresno, California 93711.  (Compl. ¶ 5.)  Defendant Singh is the alleged owner, sole director, and CEO, Secretary and CFO of Defendant Lala Trucking. (*Id.* at ¶ 7.)  The Agreements at issue identify Defendant Singh as the President of Lala Trucking Inc with a "Principal Residence/Chief Executive Office/Place of Business" at 3660 W. San Jose Ave Apt 216, Fresno CA 93711."  (Doc. 1, Exs. 1 and 2.)

<u>Service on Defendant Lala Trucking Inc</u>

Federal Rule of Civil Procedure 4(h) governs service on a domestic corporation, partnership, or other unincorporated association that is subject to suit under a common name. Under 4(h), a plaintiff may serve a corporation by following state law for service of a summons on an individual or by delivering a copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the defendant.  Fed. R. Civ. P. 4(h)(1).

Under California law, as a substitute to personal delivery of a copy of the summons and complaint, service may be made on a corporation: (1) by leaving a copy of the summons and the complaint during usual office hours in the office of the corporation's agent for service of process,

1 president, chief executive, vice president, secretary or assistant secretary, assistant treasurer,
2 controller or chief financial officer, general manager, or another head of the corporation; (2) with
3 a person "apparently in charge" of the office; and (3) "thereafter mailing a copy of the summons
4 and complaint by first-class mail, postage prepaid to the person to be served at the place where a
5 copy of the summons and complaint were left." Cal. Code Civ. Proc. §§ 415.20(a), 416.10.

The proof of service indicates that Plaintiff served Defendant Lala Trucking with the summons and complaint on its agent, Varinder Singh, by leaving a copy of the summons and complaint at the Lala Trucking business address, 3660 W. San Jose Avenue Apt. #216, Fresno, CA 93711, with an employee/person apparently in charge, John Doe, on October 1, 2024.  (Doc. 6) The proof of service represents that the process server informed John Doe of the general nature of the papers and, thereafter, mailed copies of the summons and complaint, as well as other documents, to the same address, to the attention of Varinder Singh.  (*Id.*)

Service on Defendant Singh

Federal Rule of Civil Procedure 4(e) governs service on an individual.  Under 4(e), a plaintiff may serve an individual within a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  According to the proof of service on file, Defendant Singh was served by leaving a copy of the summons and complaint at the Lala Trucking business address, 3660 W. San Jose Avenue Apt. #216, Fresno, CA 93711, with an employee/person apparently in charge, John Doe, on October 1, 2024.  (Doc. 7.)  Thereafter, the summons and complaint were mailed to Defendant Singh at the same address.  (*Id.*)

7

California law permits substituted service on an individual if a copy of the summons and complaint with reasonable diligence cannot be personally delivered by:

> by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, . . . in the presence of . . . a person apparently in charge of his or her office, place of business, . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Civ. Proc. Code § 415.20(b). Here, service was attempted at Defendant Singh's business address on three separate occasions before substituted service was completed on the person apparently charge. (Doc. 7 at 3.) The summons and complaint were subsequently mailed to Defendant Singh at the same address. (*Id.* at 5.)

Having considered the proofs of service, the Court finds that Defendants were properly served with the summons and complaint pursuant to Federal Rule of Civil Procedure 4.

**B. The *Eitel* Factors Weigh in Favor of Default Judgment**

As discussed below, the Court finds that the *Eitel* factors weigh in favor of granting default judgment.

1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Plaintiff contends that denying judgment would prejudice Plaintiff because Defendants "refused to participate in the action and has made default judgment the sole avenue of relief available to Plaintiff." (Doc. 10 at 11.) The Court agrees that Plaintiff would be prejudiced if default judgment were not granted. Default has been entered against Defendants and Plaintiff has no other means to recover against them. This factor weighs in favor of default judgment.

2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Notably a

8

"defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges breach of contract.

The loan agreements at issue provide that they will be subject to the laws of the State of Illinois. (Doc. 1, Ex. 1 ¶ 7.6; Ex. 2 ¶ 7.6.) In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction *or any other reasonable basis exists for the parties' choice of law*.'" *1–800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513–14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of law provisions. *1–800–Got Junk? LLC*, 189 Cal. App. 4th at 513.

Plaintiff does not address the choice-of-law provisions. Instead, Plaintiff identifies only California's substantive law. (*See* Doc. 10 at 11.) However, because the elements of breach of contract in Illinois and California are identical, the Court need not determine which jurisdiction's law applies. *First Am. Com. Bancorp, Inc. v. Vantari Genetics*, LLC, No. 2:19-cv-04483-VAP-FFM, 2020 WL 5027990, at *3 n. 1 (C.D. Cal. Mar. 12, 2020) (citing *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999)); *Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 118859, at *4 (N.D. Cal. Jan. 12, 2017) ("The elements of a breach of contract claim under California and Illinois law are the same."). In California, "[t]o be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *First Am. Com. Bancorp*, 2020 WL 5027990, at *3 (quoting *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998)). "Under Illinois law, a plaintiff suing for breach of contract must prove: (1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages." *Smart Oil, LLC v. DW Mazel,*

1  *LLC*, 970 F.3d 856, 861 (7th Cir. 2020).

2  Here, Plaintiff alleges that Defendant Lala Trucking entered into the identified
3  Agreements, has failed to perform under the Agreements by failing to make payments when those
4  payments become due, and Plaintiff is entitled to contractual money damages under the
5  Agreements. (Compl. ¶¶ 55-58.) Plaintiff also alleges that Defendant Singh entered into the
6  identified Guaranties, has failed to perform under the Guaranties by failing to make payments
7  when those payments became due, and Plaintiff is entitled to recover contractual money damages.
8  (*Id.* ¶¶ 60-62.)

9  The Court finds that Plaintiff's complaint sufficiently states a claim for breach of the
10 Agreements and Guaranties, which weighs in favor of default judgment.

11     3.   The Sum of Money at Stake in the Action

12 Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at
13 stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at
14 1176. Here, Plaintiff seeks judgment in the amount of $364,738.19, which includes attorneys'
15 fees in the amount of $3,672.50, and court costs in the amount of $556.84, against Defendants,
16 less any net sales proceeds received from the sale of certain collateral vehicles. (Doc. 10 at 13;
17 Oliver Decl. ¶¶ 35-37.) The Court finds the amount at stake is not large, it is proportional to the
18 harm caused by Defendants' failure to repay the loan amounts, and is subject to a reduction
19 based on any net sales proceeds from any recovered collateral. This factor therefore does not
20 weigh against entry of default judgment.

21     4.   The Possibility of a Dispute Concerning Material Facts

22 The facts of this case are straightforward, and Plaintiff has provided the Court with well-
23 pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth
24 of well-pled facts in the complaint following the Clerk's entry of default and, thus, there is no
25 likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in
26 this case or a response to the instant motion further supports the conclusion that the possibility of
27 a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 226
28 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

        5.    <u>Whether the Default Was Due to Excusable Neglect</u>

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

Plaintiff properly served Defendants with the summons and complaint. (Docs. 6, 7.) Moreover, Plaintiff served Defendants with a copy of the request for entry of default, the motion for default judgment, and the declarations and exhibits in support of the motion for default judgment. (Doc. 8 at 3; Doc. 8-1 at 18; Doc. 10 at 14; Doc. 12 at 33; Doc. 13 at 9.) Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendants have not appeared to date. Thus, the record suggests that they have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

        6.    <u>The Strong Policy Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

///

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants.

### IV.    REQUESTED RELIEF

#### A. Damages

The loan agreements at issue all provide that in the event of default by the debtor or guarantor, all indebtedness becomes immediately due and payable, Plaintiff is entitled to take possession of and dispose of the equipment and to have the debtor pay all interest and expenses incurred, including reasonable attorneys' fees. (Doc. 1, Ex. 1 ¶¶ 5.1-5.3; Ex. 2 ¶¶ 5.1-5.3.) As of the respective dates of default on the various agreements, Plaintiff declares that the principal amounts due and owing total $328,124.98 ($18,488.90 + 309,636.08). (Oliver Decl. ¶ 19.) At the time of default, accrued and unpaid interest due and owing under the agreements totaled $2,477.14 ($8.63 + 2,468.51). (*Id.* ¶ 20.) Calculated from the respective dates of default to the dates of acceleration, the amount of accrued and unpaid interest due and owing under the Agreements is no less than $9,892.72 ($344.76 + $9,547.96) (*Id.* ¶ 21.) Through acceleration, late charges in the amount of $4,177.03 ($766.69 + $3,410.34) have accrued. (*Id.* ¶ 24.) Through acceleration, other fees, including return item fees, have accrued in the amount of $100.00. (*Id.* ¶25.)

Calculated as of November 4, 2024, the amount due and owing under the Agreements, not including attorneys' fees and expenses, is an amount not less than $360,508.85. (*Id.* at ¶ 35(c).) These requested amounts are supported by declaration. (Doc. 12.) The agreements and declaration constitute sufficient proof that Plaintiff has sustained damages for the breaches of the Agreements. Plaintiff therefore seeks judgment in the amount of $360,508.85, plus post-judgment interest and attorneys' fees and costs, against Defendants.

#### B. Attorneys' Fees and Costs

Plaintiff seeks a total amount of $3,672.50 in attorneys' fees and $556.84 in court costs. (Oliver Decl. ¶¶ 36-37; Doc. 13, Declaration of Ken I. Ito ("Ito Decl.") ¶¶ 5, 7, 9.) California and Illinois both enforce contractual provisions allowing the collection of reasonable attorneys' fees. Cal. Civ. Proc. Code § 1021 ("Except as attorney's fees are specifically provided for by statute,

1  the measure and mode of compensation of attorneys and counselors at law is left to the
2  agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to
3  their costs, as hereinafter provided."); *Gil v. Mansano*, 121 Cal. App. 4th 739, 742-43 (2004);
4  *Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-CV-4731, 2012 WL 3777025, at *3
5  (N.D. Ill. Aug. 27, 2012) ("Illinois recognizes the American Rule that 'absent a statute or
6  contractual provision, a successful litigant must bear the burden of his or her own attorney's
7  fees.'"). Under the Agreements, Defendant Lala Trucking is obligated to pay the attorneys' fees
8  and costs incurred by Plaintiff in the enforcement of its rights, including expenses of filing and
9  prosecuting this action. (Oliver Decl. ¶ 27; Doc. 1, Ex. 1 ¶ 5.2, Ex. 2 ¶ 5.2.) Plaintiff is therefore
10 entitled to recovery of attorneys' fees and costs.

11       To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of
12 hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461
13 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks
14 to the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895
15 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the
16 forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th
17 Cir. 2013). Thus, when a case is filed in the Eastern District of California, this district "is the
18 appropriate forum to establish the lodestar hourly rate . . . ." *See Jadwin v. County of Kern*, 767
19 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

20       <u>Reasonable Hourly Rate</u>

21       Hourly rates for attorney fees awarded in the Eastern District of California range from
22 $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing
23 approximately 30 years. *See*, *e.g.*, *BMO Bank N.A. v. Cheema*, No. 1:24-CV-00634-SAB, 2024
24 WL 4357004, at *9 (E.D. Cal. Oct. 1, 2024), report and recommendation adopted, No. 1:24-CV-
25 00634-KES-SAB, 2024 WL 4873520 (E.D. Cal. Nov. 22, 2024) (collecting cases and awarding
26 hourly rate of $325 to attorney with more than 28 years litigation experience); *Olguin v. FCA US*
27 *LLC*, No. 1:21-CV-1789 JLT CDB, 2024 WL 4012103, at *7 (E.D. Cal. Aug. 30, 2024)
28 (collecting cases and awarding hourly rates of $525 for attorneys practicing more than 20 years,

13

$500 for attorneys practicing between 18 and 19 years, $450 to attorney practicing for approximately 13 years, $400 to attorney with 7-10 years of experience, $300 to attorney practicing about 6 years, $275 to attorney practicing about 4 years, and $250 for attorney practicing approximately 2 years); *Owen v. Hyundai Motor Am.*, No. 2:22-CV-00882-KJM-CKD, 2024 WL 3967691, at *4 (E.D. Cal. Aug. 28, 2024) (collecting cases and finding typical rate for attorneys who have been practicing for more than ten years but less than fifteen years is between $350 and $375).

Plaintiff's counsel was admitted to practice in California in 2011, and has more than 13 years of experience. (Ito Decl. ¶ 7.) He is seeking $325.00 per hour for his work in this matter. Given this information, the Court finds Mr. Ito's hourly rate of $325.00 is reasonable.

<u>Hours Reasonably Expended</u>

According to the declaration of Attorney Ito and the corresponding invoice, Attorney Ito has expended 7.80 hours of work. (Ito Decl. ¶ 5 and Ex. 9.) In addition, Attorney Ito declares that to "prepare this Motion for Default Judgment, and assuming there is no need for an appearance for this Motion for Default Judgment, it is anticipated and expected that it will take minimum of 3.5 hours, respectively, at a rate of $325.00 for a total of $1,137.50. The total attorney's fees would be $3,672.50." (Ito Decl. ¶ 7.) Based on the foregoing, the Court will therefore recommend awarding Plaintiff $3,672.50 for 11.3 hours of work by Attorney Ito at a rate of $325.00 per hour in attempting to collect and enforce the Agreements.

In addition to attorneys' fees, Plaintiff seeks the recovery of court costs in the amount of $556.84, consisting of costs for the Court filing fee and service of process. (Doc. 8 at pp. 6-7; Ito Decl. ¶ 9.) The Court finds these costs reasonable.

**V.    CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 10) be granted.
2. Default judgment be entered in favor of Plaintiff and against Defendants Lala Trucking Inc and Varinder Singh in the amount of $360,508.85, plus post-judgment interest, less any net sales proceeds from collateral vehicles recovered.

3. Defendants be ordered to pay Plaintiff an amount of $4,229.34, which represents the reasonable attorneys' fees of $3,672.50 and costs of $556.84 incurred in enforcing the Agreements and in collection of the amounts due.

4. Plaintiff be awarded final possession of the unrecovered vehicles identified and, upon recovery, be authorized to sell the recovered collateral in a commercially reasonable manner.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __April 21, 2025__                    /s/ Barbara A. McAuliffe
                                             UNITED STATES MAGISTRATE JUDGE